1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

SYLVESTER JAMES MAHONE,

CASE NO. C14-5812 BHS-JRC

11

Plaintiff,

12

v.

**REPORT AND RECOMMENDATION**

13

PAT MCCARTHY, et. al.,

**NOTED FOR**: SEPTEMBER 30, 2016

14

Defendants.

15

16

This 42 U.S.C. §1983 civil rights matter has been referred to the undersigned Magistrate

17

Judge pursuant to 28 U.S.C. §§ 636 (b)(1)(A) and (B) and Local Magistrate Judge Rules MJR 1,

18

MJR 3, and MJR 4. Before the Court is defendants Pat McCarthy, Paul Pastor, Eddie Parker,

19

Marvin Spencer, Martha Karr, Kathy Miller, Daniels, Dr. Balderrama,[1] and Carn's motion for

20

summary judgment ("Motion"). Dkt. 57.

21

Plaintiff has not filed a response, even though defendants sent him a *Rand* notice,

22

advising him that failure to respond could result in dismissal of his case. Dkt. 62. The Court

23

_____

24

[1] Defendant Balderrama's name is spelled incorrectly as Balderoma in some pleadings.

1 concludes plaintiff failed to sufficiently rebut defendants' summary judgment showing regarding
2 his Eighth Amendment claims.   Having reviewed the motion, supporting declarations, and
3 balance of the record, the Court recommends finding that plaintiff failed to raise a genuine issue
4 of material fact to establish that defendants acted with deliberate indifference to his health and
5 safety.   The Court recommends that defendants' motion for summary judgment (Dkt. 57) be
6 granted pursuant to Rule 56 of the Federal Rules of Civil Procedure and this case be closed.

7 **BACKGROUND**

8     Plaintiff Sylvester James Mahone was confined in the Pierce County Jail at the time of
9 his complaint. Plaintiff alleges that defendants McCarthy, Parker, Pastor, Daniels, Spencer, Karr
10 and Carn acted with deliberate indifference to his safety.   *Id.* at 12-15. Plaintiff alleges that
11 defendant Balderrama acted with deliberate indifference to his serious medical needs, denied
12 plaintiff's requests for pain medication, and "has a policy and/or custom that subordinate medical
13 providers must follow that has denied plaintiff's myriad requests for pain management
14 medications…." *Id.* at 8-9, 16-17.

15     On June 22, 2015, plaintiff entered a notice of address change with a new address in
16 Wedowee, Alabama. Dkt. 46. On May 20, 2016, plaintiff entered another notice of address
17 change with a new address in Spanaway, Washington.  Dkt. 68.  Defendants are Pierce County
18 officials: Defendant Pat McCarthy ("McCarthy") is the Pierce County Executive; Defendant Paul
19 Pastor ("Pastor") is the Pierce County Sheriff; Defendant Eddie Parker ("Parker") is the Pierce
20 County Jail Facility Maintenance Supervisor; Defendant Dr. Miguel Balderrama ("Balderrama")
21 is the Pierce County Jail Medical Director; Defendant Marvin Spencer ("Spencer") is a
22 Corrections Captain; Defendant Martha Karr ("Karr") is Chief; Defendant Kathy Miller is a
23
24

REPORT AND RECOMMENDATION - 2

1  Sergeant, but was only tied to his ADA and RA claims, which were dismissed; Defendant Carn

2  is a Safety Inspector and Deputy. Dkt. 4 at 3.

3      On September 22, 2015, defendants' motion to dismiss (Dkt. 27) was granted as to all of

4  plaintiff's claims except his Eighth Amendment claims for deliberate indifference as to

5  plaintiff's safety and deliberate indifference as to plaintiff's medical needs. Dkt. 51.  Plaintiff

6  was given leave to amend his claim alleging a failure to train and claims asserting violations of

7  the Americans with Disabilities Act ("ADA") and Rehabilitation Act ("RA"). However, plaintiff

8  failed to amend that claim. Dkt. 56.  Thus, this case is proceeding on plaintiff's two remaining

9  claims: (1) failure to take reasonable steps to protect plaintiff's safety against defendants

10  McCarthy, Parker, Pastor, Daniels, Spencer, Karr and Carn; and (2) failure to provide adequate

11  medical care against defendant Balderrama.

12      Plaintiff alleges that McCarthy, Parker, Pastor, Daniels, Spencer, Karr, and Carn violated

13  his Eighth Amendment rights by acting with deliberate indifference to his safety. *Id.* ¶¶ 44–47.

14  Plaintiff also alleges that Balderrama violated his Eighth Amendment rights by acting with

15  deliberate indifference to his medical needs. *Id.* ¶ 50.

16  **STANDARD OF REVIEW**

17      Summary judgment is appropriate if "the pleadings, the discovery and disclosure

18  materials on file, and any affidavits, show that there is no genuine dispute as to any material fact

19  and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). There is a

20  genuine issue of fact for trial if the record, taken as a whole, could lead a rational trier of fact to

21  find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986*); see

22  also T. W. Elec. Service Inc. v. Pacific Electrical Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.

23  1987). When presented with a motion for summary judgment, the court shall review the

24

1   pleadings and evidence in the light most favorable to the nonmoving party. *Anderson*, 477 U.S.

2   at 255 (*citing Adickes v. S.H. Dress & Co.*, 398 U.S. 144, 158-59 (1970)). Conclusory,

3   nonspecific statements in affidavits are not sufficient; and, the court will not presume "missing

4   facts." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990). However, "a pro se

5   complaint will be liberally construed . . . ." *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir.

6   1992) (*citing Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (other citation omitted).

7                                              **FACTS**

8           In support of their Motion, defendants submit the following declarations:  1) Miguel A.

9   Balderrama, who is a licensed physician and medical director at the Health Clinic in Pierce

10  County Jail (*see* Declaration of Miguel A. Balderrama, Dkt. 58); 2) Gina M. Lane, who is a

11  Paralegal for the Pierce County Prosecutor's Office, Civil Division  (*see* Declaration of Gina M.

12  Lane, Dkt. 59); and 3) Marvin Spencer, who is employed at the Pierce County Detention and

13  Correction Center as a Corrections Captain (*see* Declaration of Marvin Spencer, Dkt. 60).

14  Defendants also submitted a Declaration of Hector Hernandez (Dkt. 61) but it appears to be a

15  duplicate declaration of Marvin Spencer.  Plaintiff has failed to specifically challenge the facts

16  identified in the defendants' statement of undisputed facts which support the summary judgment

17  motion.  The material facts, therefore, are uncontested and largely consistent between the parties,

18  except where slight differences are noted from plaintiff's verified Complaint.  These differences,

19  however, do not create genuine issues of material facts in dispute.

20          On July 27, 2014, plaintiff tripped and fell over a cell door stop at Pierce County Jail.

21  Dkt. 4. Plaintiff states that on July 8, 2014[2] at 1:50 am he attempted to get out of his bunk to use

22

23  _____

24          [2] It appears that plaintiff meant to put July 28 instead of July 8, 2014, based on his
    fall/injury occurring on July 27, 2014.

the toilet but was unable to do so due to the pain in his left leg and he urinated on the floor. *Id.* at 4. After complaining of pain from the fall early the next morning, plaintiff was brought to the jail's medical clinic for an examination and x-rays. Dkt. 4 at 4-5. According to defendants, the x-ray revealed no damage and suggested a normal hip, but plaintiff was still treated for nerve pain and provided medication due to his subjective complaints. Dkt. 58, Exhibits B, D. According to plaintiff's verified Complaint, he was diagnosed on July 30, 2014 by non-party Steven Carver with deep torn tissue in his right hip and leg, bruised bone, muscle contusion and peripheral neuropathy – nerve damage. Dkt. 4 at 7. The clinic note on July 31, 2014 assessed plaintiff with 1) deep tissue muscle strain; 2) myalgia; 3) hip pain; and 4) constipation. Dkt. 58 at 9. According to plaintiff's verified Complaint, he was prescribed 100ml of Gabapentin a day, which was increased to 900ml a day, "Moltrin" three times a day, which was reduced to twice a day, and "Nouration [Neurontin]" *Id.* at 8, 17. Plaintiff also states in his verified Complaint that he was provided with an extra mattress, a wheelchair, a walking cane, a once daily pain pill and a month of muscle relaxers. *Id.* at 8. According to plaintiff, he was carried from his cell for the next several days by other inmates for dayroom time, attorney calls and medical visits. *Id.* at 7. For the next three days, plaintiff states he urinated on himself and could not get to the toilet because of the pain in his hip and "butt cheek area." *Id.* Plaintiff states he was unable to move on his own or get out of bed. *Id.*

Plaintiff thereafter requested that the door stops be removed, but the request was denied for safety reasons. Dkt. 4 at 21.  The floor cell door stops in question at the Pierce County Jail have been a part of the building architecture since 1984.  Dkt. 60 at 1.  The cell doors swing out to prevent inmates from barricading themselves inside the cells.  The inmate floor cell door stops are used for several safety purposes: 1) prevent inmates from hiding behind cell door; 2) prevents

1  inmates from pushing cell doors against a Corrections Deputy, Corrections staff or another

2  inmate resulting in an assault and/or injury; 3) prevent inmates from pushing cell doors against a

3  Corrections Deputy, Corrections staff or another inmate, which could result in the

4  Deputy/Corrections staff or inmate from being pushed off of the second floor tier resulting in a

5  serious injury or death; and 4) prevents damages to cell doors.  Dkt. 60 at 1-2.

6         Plaintiff sent multiple kites requesting that the door stops be removed, but the necessity

7  of the door stops for safety was explained to plaintiff in the Pierce County Jail's response to his

8  complaints. *See* Dkt. 4 at 21.  After receiving treatment and medication for his fall, plaintiff

9  made subsequent complaints that the pain medication he was receiving was inadequate. *Id.* at 8-

10  9. Dr. Balderrama prescribed Neurontin (a brand name for Gabapentin, a nerve pain medication

11  and anticonvulsant) to plaintiff which is specifically indicated for relief of the type of nerve pain

12  complained of by plaintiff.  Dkt. 58 at 2.  While in some cases narcotics can be used in addition

13  to Gabapentin to reduce pain, narcotics are prohibited in the Pierce County Jail for serious safety

14  concerns. *Id.* at 2-3.

15         Plaintiff's medical records, behavioral log, and copies of his healthcare requests reveal

16  that he received prompt treatment and/or responses to his complaints pursuant to the Pierce

17  County Jail's medical contractor and operational policies.  Dkt. 58 at 8-13.  These medical

18  policies are intended to give patients unimpeded access to medical, dental and mental health care

19  and direct that patients be seen in a timely manner by a health care professional and receive

20  health care services for serious medical, dental and mental health conditions. Dkt. 59 at 10-22.

21  The Pierce County Jail's operational policies also set forth the specific procedures whereby

22  medical requests are addressed, including a specific timeline for responding to medical kites.

23  Dkt. 59 at 8.  All medical kites must be picked up, reviewed, and prioritized within twenty-four

24

1   (24) hours. *Id.* The medical related policies were followed in responding to the requests for

2   medical care that plaintiff made while he was incarcerated. Dkt. 58, Exhibits B, C, and D.

3   Although plaintiff disagrees with his medical treatment and pain medications, he does not

4   dispute that the medical related policies were followed by defendants.

5   **DISCUSSION**

6       As an initial matter, the Court notes that defendants sent plaintiff a *Rand* notice on April

7   7, 2016 (see *Rand* Notice, Dkt. 62). *Rand v.Rowland*, 154 F.3d 952, 955-56 (9thCir.1998) (en

8   banc). Defendants sent this notice by First Class Mail to the address that plaintiff provided to the

9   Court on April 7, 2016 (*see id.*). This *Rand* Notice informed plaintiff that defendants had filed a

10  joint motion for summary judgment; that if the motion was granted it would end plaintiff's case;

11  that if there is no genuine issue of material fact summary judgment must be granted, which

12  would end plaintiff's case; that plaintiff could not rely on what is in his complaint, but that

13  instead plaintiff needed to "set out specific facts in declarations, depositions, answers to

14  interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts

15  shown in the defendant's declarations and documents and show that there is a genuine issue of

16  material fact for trial;" that if plaintiff failed to submit his own evidence in opposition, summary

17  judgment may be entered against him; and, if summary judgment is granted, that plaintiff's "case

18  will be dismissed and there will be no trial." *See* Dkt. 62 at 3. Despite this notice, plaintiff failed

19  to respond to defendants' motion for summary judgment in any way except for filing a motion

20  for extension of time to reopen discovery. Dkt. 69. The Court declined to re-open discovery, but

21  granted plaintiff another thirty-day extension to file his response. Dkt. 75. Despite the

22  extension, plaintiff failed to respond to the summary judgment. Generally, a motion for summary

23  judgment is not granted simply because there is no opposition even if the failure to oppose

24

1   violates a local rule. *See Henry v. Gill Industries,* 983 F.2d 943, 950 (9th Cir. 1993) (citations

2   omitted).   The moving party must still demonstrate the absence of genuine issues of material

3   fact, regardless of whether the party against whom the motion for summary judgment is directed

4   has filed any opposition. *Id.; Cristobal v. Seigel*, 26 F.3d 1488, 1491 (9th Cir. 1994).

5   Nevertheless, plaintiff's failure to respond to defendants' motion for summary judgment

6   provides the Court with no reason to deny defendants' motion.

7       Defendants argue that the Court should grant summary judgment against plaintiff's claims

8   under the Eighth Amendment because: (1) defendants are entitled to qualified immunity; (2)

9   plaintiff cannot show facts necessary to support his allegations of deliberate indifference; and (3)

10  plaintiff's claims under 42 U.S.C. § 1983 cannot be supported when they are based solely on a

11  respondeat superior theory of liability.

12      For the reasons discussed below, the Court concludes that summary judgment is

13  appropriate with respect to plaintiff's complaint.

14      1.   **Defendants McCarthy, Pastor, Parker, Daniels, Spencer, Karr and Carn**

15      Plaintiff alleges that defendants McCarthy, Pastor, Daniels, Spencer, Karr, and Carn

16  failed to take reasonable steps to protect plaintiff's safety.  Plaintiff claims that these defendants

17  knew of unsafe working and living conditions yet failed to have door stoppers removed, resulting

18  in his injury.  Dkt. 4 at 12.

19      Defendants assert that plaintiff's allegations regarding the use of door stops in the prison

20  did not constitute a violation of plaintiff's constitutional rights. Dkt. 57 at 8.   At worst,

21  defendants argue, plaintiff has alleged that defendants made a mistake by determining that door

22  stops were an important piece of safety equipment for inmate and staff safety. *Id.*  Defendants

23  argue that plaintiff also has failed to present evidence that could establish that this determination

24

would be unreasonable, let alone plainly incompetent. Moreover, even if a tripping hazard can in some instances create a risk rising to the level of a constitutional deprivation, it would be reasonable for jail administrators to determine that patently visible door stops (necessary to prevent the use of doors as weapons, *see* Dkt. 60, Spencer Decl. at 2) do not constitute an extreme risk "so grave that it violates contemporary standards of decency to expose anyone unwillingly ...." *Garnica v. Washington Dep't of Corr.*, 965 F. Supp. 2d 1250, 1264-65 (W.D. Wash. 2013).

Additionally, defendants McCarthy and Pastor contend that plaintiff has failed to allege facts showing that either defendant were aware of the door stop problems he complains of, or that they had any personal involvement in implementing or omitting policies that rise to a repudiation of his constitutional rights.  Dkt. 57 at 15. Defendants explain that Defendant McCarthy, the Pierce County Executive, is precluded by law from governing the daily operational management of the Pierce County Jail.  The Pierce County Charter § 3.10 provides: [T]he Executive shall not have administrative power over any other elected official or their department regarding staff supervision, staff assignments or normal daily operations."  Also, defendant Pastor argues that while he is in charge of the Pierce County Sheriff's Department, and thus the Corrections Bureau, there is no evidence to suggest that he (defendant Pastor) was made aware of the door stops, or of plaintiff's requests that they be removed, or of plaintiff's injury. Dkt. 58 at 15.

In cases involving failure to prevent harm, the Eighth Amendment is violated only when an inmate shows that he is incarcerated under conditions posing substantial risk of serious harm, and that officials displayed "deliberate indifference" to his health or safety. *Farmer v. Brennan*, 114 S.Ct. 1970 (1994).  The door stops in question have been used at the Pierce County Jail as a

1   means to protect inmates and staff since 1984.  Dkt. 60 at 1. Plaintiff has not shown that a

2   substantial risk of harm existed and that defendants McCarthy, Parker, Pastor, Daniels, Spencer,

3   Karr, and Carn were deliberately indifferent to his physical safety.

4       Although plaintiff generally claims that defendants had prior specific knowledge that an

5   inmate could get hurt on the door stops, this is only a general and conclusory allegation  Mere

6   conclusory allegations without more are insufficient to support a § 1983 claim or withstand

7   summary judgment.  *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9thCir.1984).

8       Plaintiff has failed to set forth admissible evidence to substantiate that general allegation.

9   Significantly, plaintiff's complaint does not allege that, prior to this incident, he or anybody else

10  had advised these defendants or staff of any problems caused by the door stops.

11      As to defendants Parker, Daniels, Spencer, Karr and Carn, the Court recommends finding

12  that there is no material issue of fact in dispute as to whether these defendants were actually

13  aware of and consciously disregarded a substantial risk of serious harm to the plaintiff with

14  regard to the door stops in violation of the Eighth Amendment.  Accordingly, it is recommended

15  that the Court grant summary judgment in favor of defendants McCarthy, Pastor, Parker,

16  Daniels, Spencer, Karr and Carn.  Therefore, it is unnecessary to consider defendants' further

17  argument that each defendant is entitled to qualified immunity with regard to plaintiff's claims

18  for damages.

19      Further, as to defendant McCarthy, the Court recommends that summary judgment be

20  granted for the separate and independent reason that he has no legal responsibility or authority to

21  change the operations of the Pierce County Jail; therefore, defendant McCarthy cannot be held

22  liable on a theory of supervisory liability.  Similarly, without knowledge of the alleged problem,

23  defendant Pastor cannot held liable for failing to implement a policy to remove the door stops.

24

REPORT AND RECOMMENDATION - 10

1   Because defendants McCarthy and Pastor cannot be held liable under a theory of supervisory

2   liability, the Court recommends, as an independent reason for granting summary judgment, that

3   plaintiff has failed to state a facially plausible claim of supervisory liability as to those two

4   defendants.

5        **2.        Defendant Balderrama**

6        Plaintiff alleges defendant Balderrama failed to provide adequate medical care.   Dkt. 4 at

7   12.  Plaintiff alleges that his subsequent complaints of pain were ignored. Dkt. 4 at 8-9. Plaintiff

8   also claims that his prescription for Gabapentin should have been changed to something else for

9   pain management but offers no evidence as to what should have been prescribed instead.

10  Plaintiff claims that defendant Balderrama violated plaintiff's Eighth Amendment rights.

11       To establish a constitutional violation pursuant to the Eighth Amendment due to

12  inadequate medical care, a plaintiff must show "deliberate indifference" by prison officials to a

13  "serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).   For an inmate to state a

14  claim under § 1983 for medical mistreatment or denial of medical care, the prisoner must allege

15  "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical

16  needs." *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); *Estelle*,

17  429 U.S. at 106.  Such conduct is actionable under 42 U.S.C. § 1983.  *See, e.g., McGuckin v.*

18  *Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992*), reversed on other grounds*, *WMX Technologies, Inc.*

19  *v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997). "Because society does not expect that prisoners

20  will have unqualified access to health care, deliberate indifference to medical needs amounts to

21  an Eighth Amendment violation only if those needs are 'serious.'" *Hudson*, 503 U.S. at 9.

22       In a case alleging an Eighth Amendment violation, "the appropriate inquiry when an

23  inmate alleges that prison officials failed to attend to serious medical needs is whether the

24

1   officials exhibited 'deliberate indifference.'" *Hudson v. McMillian*, 503 U.S. 1, 5-6, 112 S. Ct.

2   995, 998 (1992). To establish deliberate indifference, a prisoner must show that a defendant

3   purposefully ignored or failed to respond to the prisoner's pain or possible medical need. *See*

4   *McGuckin, supra,* 974 F.2d at 1060; *Estelle, supra*, 429 U.S. at 104.   "Such indifference may be

5   manifested in two ways. It may appear when prison officials deny, delay or intentionally

6   interfere with medical treatment, or it may be shown by the way in which prison physicians

7   provide medical care." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

8       A determination of deliberate indifference involves an examination of two elements: the

9   seriousness of the prisoner's medical need and the nature of the defendant's response to that

10   need.  *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992) overruled on other grounds by

11   *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).   First, a "serious medical

12   need" exists if the failure to treat a prisoner's condition would result in further significant injury

13   or the unnecessary and wanton infliction of pain contrary to contemporary standards of decency.

14   *Helling v. McKinney*, 509 U.S. 25, 32-35; *McGuckin*, 954 F.2d at 1059.   "The existence of an

15   injury that a reasonable doctor or patient would find important and worthy of comment or

16   treatment; the presence of a medical condition that significantly affects an individual's daily

17   activities; or the existence of chronic and substantial pain are examples of indications that a

18   prisoner has a 'serious' need for medical treatment." *McGuckin*, 974 F.2d at 1059-60.

19       Second, the indifference to medical needs must be substantial; a constitutional violation

20   is not established by negligence or "an inadvertent failure to provide adequate medical care."

21   *Estelle*, 429 U.S. at 105-06; *Anthony v. Dowdle*, 853 F.2d 741, 743 (9th Cir. 1988).   Prison

22   officials violate their obligation by "intentionally denying or delaying access to medical care."

23   *Estelle*, 429 U.S. at 104–05. A difference of opinion between an inmate and medical authorities

24

1   regarding proper medical treatment does not give rise to a § 1983 claim. *Franklin v. Oregon,*

2   *State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981).

3        Mere negligence in diagnosing or treating a medical condition, without more, does not

4   violate a prisoner's Eighth Amendment rights. *Hutchinson v. United States*, 838 F.2d 390, 394

5   (9th Cir. 1988). According to the Supreme Court, an official can be found liable pursuant to the

6   Eighth Amendment if "the official knows of and disregards an excessive risk to inmate health or

7   safety . . . ." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

8        Defendant Balderrama argues that plaintiff's unsupported allegations that his medical

9   requests were ignored are entirely contradicted by his medical request forms and kites (*see* Dkt.

10  58, Balderrama Decl. Ex. D; Dkt. 4 at 21-23) and his chronological record of medical care (*see*

11  *Id.*, Balderrama Decl. Ex. B).

12       The chronological record of medical care reveals that plaintiff was seen for his injury on

13  the following dates:  July 29, 2014; July 31, 2014; August 13, 2014; August 15, 2014; September

14  5, 2014; September 11, 2014; September 18, 2014; September 22, 2014; October 20, 2014;

15  October 23, 2014; and November 2, 2014.  Dkt.  58 at 8-13.  Plaintiff alleges in his complaint

16  that he fell on the door stop on July 27, 2014 and was not seen until July 30, 2014.  Dkt. 4 at 7.

17  Plaintiff's medical records, however, indicate he was seen on July 29, 2014, not July 30, 2014

18  and then again on July 31, 2014.  Dkt. 58 at 8-9.

19       On the first visit after his fall on the door stop on July 29, 2014, the clinic note stated

20  plaintiff "tripped and fell in the unit on Sunday night while doing unit workers duties in the

21  dayroom. Dkt. 58 at 8.  Plaintiff had an x ray taken Monday morning which was negative for

22  fracture.   *Id*.  Patient states that he can't walk by himself and the inmates are carrying him up

23

24

1  and down the stairs.  *Id.*  Patient states that the pain involves his right hip. He states that he can't

2  get out of the wheelchair to sit on the examination table without assistance."  *Id.*

3  On July 31, 2014 the clinic note stated, "patient reports experiencing less pain since he

4  has started taking the ibuprofen and cyclobenzaprine.   [P]atient tried to stand up to get up on

5  examination table but said he could not do it because of he [sic] hip pain he feels when weight is

6  pus [sic] on his right hip. [H]e requested a second mattress and a bedpan. [S]tates he can't get up

7  to urinate. [P]atient stated that he does not want to try using crutches at this time because his hip

8  hurts when he is holding his right leg up. [P]atient stated the only time he has pain and

9  discomfort is when he is transferring out of the wheelchair. [H]e denies hip, leg foot tingling and

10 discrease [sic] in sensation. Patient denies back involvement. Patient complains of constipation

11 times two days." Dkt. 58 at 8-9.  The clinic note further indicated improvements since plaintiff's

12 initial visit.  The clinic notes stated that "this is a 44 year old male whom I requested to follow

13 up with in the clinic to evaluate his pain control and his improvement since he fell while working

14 in the jail kitchen over the weekend. [P]atient has positive affect. [H]e is smiling and discussing

15 good restaurants in Tacoma that sell african american food dishes. Patient can raise his leg from

16 the wheel chair supports and he can rotate his foot from side to side.  Dkt. 58 at 9.  Plaintiff's

17 examination on July 31, 2014, four days after his fall, revealed:

18
        Examination: Perrlac, eom intact, hearing is intact. [E]xternal ear canal
        have very little cerumen in them and the tympanic membranes are well
19      visualized. His nares are patient. [H]e have no cold symptoms at this time.
        bridge of nose show no deviations. His mouth was examined. [T]hroat is
20      pink and not swollen. [H]is neck is supple and there is no lymphedema
        present. [H]is skin is smooth and without rashes and infections. There is
21      no skin bruising at this time. [H]is heart beats in normal sinus rhythm,
        there are no murmurs or gallops auscultated. [H]is lungs are clear to
22      auscultation, negative for wheezes. [A]bdomen is soft and not tender.
        [B]owel tones active times 4 quadrants.

23

24

1          The assessment included the following:  1) deep tissue muscle strain; 2)
           myalgia; 3) hip pain; 4) constipation.
2    Dkt. 58 at 9.

3          Defendant Balderrama, a licensed physician and medical director for the Health Clinic in

4    the Pierce County Jail, reviewed plaintiff's records and complaints and determined that it was

5    unnecessary to prescribe narcotics in addition to the Galapentin that he was prescribed and

6    receiving.  Dkt. 58 at 3.  Despite plaintiff's claims that his prescription for Gabapentin should

7    have been changed, he offers no evidence to support this conclusory allegation. Defendant states

8    Gabapentin (marketed under the name Neurontin) is a medication specifically indicated for relief

9    of the type of nerve pain complained of by plaintiff.  Dkt. 58 at 2. According to defendant

10   Balderrama, plaintiff received the proper medication specifically indicated for his particular

11   complaints of pain. *Id*. Defendant states that in some cases narcotics can be used in addition to

12   Gabapentin to reduce pain, but narcotics are prohibited in the Pierce County Jail for serious

13   safety concerns. *Id*. Furthermore, even if narcotics were available in the Pierce County Jail, Dr.

14   Balderamma asserts that plaintiff's medical complaints and evaluations did not substantiate a

15   need for them in addition to the pain medication he was receiving. *Id.*  In fact, on July 31, 2014,

16   plaintiff reported that "he was experiencing less pain since he has started taking the ibuprofen

17   and cyclobenzaprine."  Dkt. 58 at 8. Plaintiff admits in his complaint that he was also issued an

18   extra mattress, a wheel chair, a walking cane, a daily pain pill, Motrin three times a day, and a

19   month of muscle relaxers for his injury.  Dkt. 4 at 8.

20         A difference of opinion between an inmate and medical authorities regarding proper

21   medical treatment does not give rise to a § 1983 claim.  *Franklin v. Oregon*, *State Welfare Div*.,

22   662 F.2d 1337, 1344 (9th Cir. 1981).  Plaintiff's chronological medical record shows that when

23   he complained of pain, he was seen by medical staff and prescribed medication to help. Dkt. 58

24

1  at 8-13.  Based on the undisputed facts indicating that plaintiff was seen on 11 separate occasions

2  for his fall on the door stop, and that his pain and condition improved, an Eighth Amendment

3  violation cannot be found.  The undisputed facts further show that his "pain was improving" on

4  the prescribed medications and ibuprofen as early as four days after his injury.  Dkt. 58 at 9.

5  Plaintiff's unsupported allegations that he was denied "adequate medical treatment" suggesting

6  some "other treatment" should have been provided (Dkt. 4 at 11) is insufficient to support his

7  claim for deliberate indifference to his medical needs.  Defendant Balderrama also argues that

8  although he is the medical director, he was not personally involved in the alleged constitutional

9  violations.  Defendant Balderrama argues that he cannot be liable as a supervisory official on a

10  theory of vicarious liability.   Dkt. 57 at 11.  Liability under § 1983 arises only upon a showing

11  of personal participation by the defendant. *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979).

12  "A supervisor is only liable for constitutional violations of his subordinates if the supervisor

13  participated in or directed the violations, or knew of the violations and failed to act to prevent

14  them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Therefore, in addition to plaintiff's

15  failure to demonstrate that he was the victim of deliberate indifference, the Court also

16  recommends dismissing the claims against defendant Balderrama because of the lack of his

17  personal involvement in plaintiff's care.

18        Viewing the factual evidence established by record in the light most favorable to plaintiff,

19  the Court recommends finding, as a matter of law, that plaintiff has no § 1983 claim against

20  defendant Balderrama.  Therefore, it is unnecessary to consider defendant Balderrama's further

21  argument that he is entitled to qualified immunity with regard to plaintiff's claims for damages.

22  //

23

24

1   **B.      Conclusion**

2        For the reasons stated above, the undersigned recommends that the defendants' motion

3   for summary judgment (Dkt. 57) should be granted.

4        Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

5   Procedure, the parties shall have fourteen (14) days from service of this Report and

6   Recommendation to file written objections.  See also Fed. R. Civ. P. 6.  Failure to file objections

7   will result in a waiver of those objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140

8   (1985).  Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the

9   matter for consideration on **September 30, 2016,** as noted in the caption.

10

11       Dated this 8th day of September, 2016.

12

13       _____
         J. Richard Creatura

14       United States Magistrate Judge

15

16

17

18

19

20

21

22

23

24

REPORT AND RECOMMENDATION - 17